UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN TOOLING CENTER,
INC., a Michigan corporation,

    Plaintiff,

v.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA,
a Connecticut domiciled insurance
company,

    Defendant.
_____/

Case No. 16-12108

Hon. John Corbett O'Meara

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the court are the parties' cross-motions for summary judgment. For the reasons explained below, Defendant's motion is granted and Plaintiff's motion is denied.

**BACKGROUND FACTS**

Plaintiff, American Tooling Center, Inc. ("ATC"), seeks to recover under an insurance policy issued by Defendant, Travelers Casualty and Surety Company of America ("Travelers"). After receiving emails that appeared to be from one of its vendors, ATC authorized payments to a bank account it believed belonged to the

vendor.  The emails were fraudulent, however, and the payments were received by the fraudsters, not ATC's vendor.  ATC contends that it suffered a loss that is covered under the "computer fraud" provision of its Travelers insurance policy.  Travelers argues that ATC did not incur a covered loss under the policy.

ATC is a tool and die manufacturer, which outsources some of its work to other die manufacturing companies overseas.  One of those vendors is Shanghai YiFeng Automotive Die Manufacture Co., Ltd. ("YiFeng").  ATC typically issues purchase orders to YiFeng, which then manufactures the dies.  ATC sends payment to YiFeng in stages, reflecting certain completion milestones.  To receive payment, YiFeng submits an invoice for each milestone by email.  ATC verifies that the milestone is met, then pays the invoices by initiating wire transfers from its Comerica bank account to YiFeng's bank account.

On March 18, 2015, ATC's Vice President/Treasurer, Gary Gizinski, sent an email to his contact at YiFeng, requesting copies of all outstanding invoices.  In response, Gizinski received an email purportedly from YiFeng, but which was actually sent by a third party. (The third party made the email appear to be from YiFeng by using the "yifeng-**rn**ould" domain, which is easily confused for the correct domain: "yifeng-**m**ould.com").  The third party, pretending to be from YiFeng, instructed ATC to send payment for several legitimate outstanding

invoices to a new bank account. Without verifying the new banking instructions, ATC wire transferred approximately $800,000 to a bank account that was not controlled by YiFeng. By the time the fraud was detected, the funds had been transferred and the wire transfers could not be retracted. YiFeng did not receive payment for the invoices, although ATC eventually paid YiFeng about 50% of the invoice amounts, or about $400,000.

ATC filed a claim under its Travelers insurance policy, which was denied. Travelers contends that ATC's loss was not a "direct loss" that was "directly caused by the use of a computer," as required by the policy. The policy covers "computer crime" as follows: "The Company will pay the **Insured** for the **Insured's** direct loss of, or direct loss from damage to, **Money, Securities** and **Other Property** directly caused by **Computer Fraud**." Pl.'s Ex. A (emphasis in original). "Computer Fraud" is defined as

> The use of any computer to fraudulently cause a transfer of **Money, Securities** or **Other Property** from inside the **Premises** or **Financial Institution Premises**:
> 1. to a person (other than a **Messenger**) outside the **Premises** or **Financial Institution Premises**; or
> 2. to a place outside the **Premises** or **Financial Institution Premises**.

Id. (emphasis in original).

## **LAW AND ANALYSIS**

The parties do not dispute the material facts, but disagree regarding whether ATC has suffered a covered loss under the Travelers policy. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The parties agree that this diversity action is governed by Michigan law.

> Initially, in reviewing an insurance policy dispute we must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction. First, an insurance contract must be enforced in accordance with its terms. A court must not hold an insurance company liable for a risk that it did not assume. Second, a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. Thus, the terms of a contract must be enforced as written where there is no ambiguity.

Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 353-54, 596 N.W.2d 190 (1999) (citations omitted).

Travelers contends that ATC did not suffer a "direct loss" that was "directly caused" by "the use of any computer." ATC received fraudulent emails that were "spoofed" to appear as though they originated from YiFeng. In response, ATC verified that certain production milestones had been met, then authorized payment to the bank account specified in the fraudulent emails. ATC did not attempt to

independently verify the bank account change with YiFeng.  Given the intervening events between the receipt of the fraudulent emails and the (authorized) transfer of funds, it cannot be said that ATC suffered a "direct" loss "directly caused" by the use of any computer.  The Sixth Circuit, applying Michigan law, has noted that "direct" is defined as "immediate," without anything intervening.  See Tooling, Manufacturing & Technologies Ass'n v. Hartford Fire Ins. Co., 693 F.3d 665, 673 (6th Cir. 2012) ("The primary word used to describe 'directly' in each of these definitions is 'immediate,' and each of the dictionaries defines 'directly' or 'direct' as 'without anything intervening' or 'without any intervening space or time ... agency or instrumentality.'").  Here, the fraudulent emails did not "directly" or immediately cause the transfer of funds from ATC's bank account.   Rather, intervening events between ATC's receipt of the fraudulent emails and the transfer of funds (ATC verified production milestones, authorized the transfers, and initiated the transfers without verifying bank account information) preclude a finding of "direct" loss "directly caused" by the use of any computer.[1]

---

[1] Plaintiff urges the court to rely upon Owens, Schine & Nicola, P.C. v. Travelers Cas. & Sur. Co., 2010 WL 4226958 (Conn. Super. Sept. 20, 2010), which was vacated by stipulation of the parties, 2012 WL 12246940 (Conn. Super. Apr. 18, 2012).  Aside from its lack of precedential value, Owens is distinguishable.  Applying Connecticut law, the Owens court relied in part on a broader definition of "direct" as synonymous with "proximate" or "predominate" cause.  In contrast, the Sixth Circuit in Tooling predicted that the Michigan Supreme Court would adopt the narrower "direct is direct" or direct as "immediate" approach. Tooling, 693 F.3d at 673-76.

In addition, under similar circumstances, courts have found no coverage for computer fraud. In <u>Apache Corp. v. Great American Ins. Co.</u>, 662 Fed. Appx. 252 (5th Cir. 2016), Apache received fraudulent emails purportedly from one of its vendors, directing it to make payments for legitimate invoices to a criminal's bank account. Apache paid the invoices before discovering the fraud. It submitted a claim to GAIC, asserting coverage under a "computer fraud" provision similar to the one at issue here. <u>Id.</u> ("We will pay for loss . . . resulting directly from the use of any computer to fraudulently cause a transfer. . . ."). GAIC denied the claim, contending that Apache's loss did not "result directly from the use of any computer to fraudulently cause a transfer." <u>Id.</u>

The Fifth Circuit agreed, finding that the mere sending/receipt of fraudulent emails did not constitute "the use of any computer to fraudulently cause a transfer." The court explained:

> The email was part of the scheme; but, the email was merely incidental to the occurrence of the authorized transfer of money. To interpret the computer-fraud provision as reaching any fraudulent scheme in which an email communication was part of the process would . . . convert the computer-fraud provision to one for general

---

Further, as supplemental authority, Plaintiffs submitted <u>Medidata Solutions, Inc. v. Federal Ins. Co.</u>, Case No. 15-CV-907 (S.D. N.Y. July 21, 2017). Docket No. 32. <u>Medidata</u> is distinguishable because the insurance policy does not include the language at issue here, which requires the "direct loss" to be "directly caused by Computer Fraud."

>    fraud.

Apache, 662 Fed. Appx. at 258 (citation omitted).

Although fraudulent emails were used to impersonate a vendor and dupe ATC into making a transfer of funds, such emails do not constitute the "use of any computer to fraudulently cause a transfer." There was no infiltration or "hacking" of ATC's computer system. The emails themselves did not directly cause the transfer of funds; rather, ATC authorized the transfer based upon the information received in the emails. The Ninth Circuit has interpreted the phrase "fraudulently cause a transfer" to "require the unauthorized transfer of funds." Pestmaster Servs., Inc. v. Travelers Casualty & Surety Co. of America, 656 Fed. Appx. 332 (9th Cir. 2016). "Because computers are used in almost every business transaction, reading this provision to cover all transfers that involve both a computer and fraud at some point in the transaction would convert this Crime Policy into a 'General Fraud' Policy." Id. See also Incomm Holdings, Inc. v. Great American Ins. Co., 2017 WL 1021749 *10 (N.D. Ga. Mar. 16, 2017) (noting that "courts repeatedly have denied coverage under similar computer fraud provisions, except in cases of hacking where a computer is used to cause another computer to make an unauthorized, direct transfer of property or money").

For these reasons, the court finds that ATC did not suffer a "direct loss" that

was "directly caused by computer fraud" and that there is no coverage under the Travelers policy.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that American Tooling Center's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Travelers Casualty and Surety Company of America's motion for summary judgment is GRANTED.

                                               s/John Corbett O'Meara
                                               United States District Judge

Date:  August 1, 2017


I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, August 1, 2017, using the ECF system.

                                               s/William Barkholz
                                               Case Manager